**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | |
| | Chapter 13 Case No. 15-08916 |
| Faye T. Pantazelos, | |
| | Judge: Honorable Jack B. Schmetterer |
| Debtor. | |
| | Trustee: Tom Vaughn |

| | |
|---|---|
| In re: | **ADVERSARY PROCEEDING** |
| Faye T. Pantazelos, | |
| Plaintiff, | Adversary Case No. 15-A-00314 |
| v. | |
| J. Kevin Benjamin, Theresa Benjamin, and | Judge: Honorable Jack B. Schmetterer |
| Benjamin Brand LLP | |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

NOW COMES J. Kevin Benjamin ("JKB"), individually, Theresa Benjamin, ("TB") individually and Benjamin Brand LLP ("BBLLP", and collectively the "Defendants" or "Movant"), by and through their undersigned counsel, and submit its Reply in Support of Defendant's Motion To Dismiss in which the Movant respectfully states to the Court as follows:

**SUMMARY**

The underlying chapter 13 petition filed by Faye Pantazelos (the "Debtor" or "Plaintiff") and her chapter 13 attorney (and attorney on the adversary complaint) David Llyod, on or about March 15, 2015, is nothing but a sham filing in both instances. Both the underlying chapter 13 petition and the adversary complaints filed in this matter are beset with false representations, outright lies, omission of assets and liabilities and just blatant perjury and a fraud upon this bankruptcy court. The debtor has no intention of confirming a chapter 13 plan, she had just hoped to get an automatic stay against US Bank and a settlement check from them and stay an undisclosed litigation proceeding with the FDIC.

Faye Pantazelos was the former President and CEO of New Century bank until being accused of substantial fraud in relation to running the bank that allegedly made the bank go under with shareholders and others losing untold millions of dollars. On information and belief she has also filed a fraudulent insolvency statement with the IRS and may have filed fraudulent tax returns for at least the year 2014 which has appeared to have worked as the IRS's filed claim is now about half of what she had previously owed and much of that may be for new taxes anyway post filing of her previous chapter 13.

Attorney David Llyod had repeatedly lied to Judge Schmetterer and the Chapter 13 in open court and filed pleadings without undertaking any due diligence or review and doctoring them to fit his fraudulent scheme. In the sham adversary filing the debtor and Floyd allege 3 counts. Count I alleges a preference (which was why the case was suddenly filed on Friday March 13, 2015 in an attempt to be able to have a "less then 90 day" claim). Count I alleges no factual allegations against BBLLP or TB and further alleges no factual allegations in which a claim can be stated against JKB nor does it even address all the elements of a preference claim.

Count II alleges a claim for recovery of money owed the estate under § 542(b) which is not even a proper claim under bankruptcy rule 7001 referring to adversary complaints that

would give the debtor and standing or this court any jurisdiction to hear, nor does it even allege

any factually supported allegations that would give rise to a section § 542(b) claim (a debt owed

the debtor that is property of the estate) in the first place, despite the fact that it is not proper

under bankruptcy rule 7001.  Further Count II makes no formal claim against TB or BBLLP at

all. In fact the only reason for Count II is that the payment alleged in Count II to having been

made to JKB was more then 90 days from the filing of the current underlying chapter 13 so

debtor and Lloyd conspired to make up some bogus claim and try to fit it into an adversary

complaint.

Count III makes some absurd allegation related to JKB's former representation of debtor

in an individual chapter 11 from January of 2013 that was under Judge Hollis and debtor again

asserts no support for any standing or jurisdiction to have this current bankruptcy court review

attorney fees from over 2 ½ years ago that has been dismissed and had been before a different

Judge (Judge Hollis).  Debtor makes no allegation that bankruptcy rule 7001 is even applicable

in this matter either and of course Count III again makes no factually supported allegations

against TB or BBLLP  whom both have been sued on all three counts, without hardly being

mentioned, in violation of Rule 9011 and with one purpose, to harass BBLLP, TB and JKB into

paying what amounts to nothing more then a shake down or civil conspiracy to defraud not only

this bankruptcy court but JKB, TB an BBLLP.  Naturally debtor has made no motion before

Judge Hollis to reopen the previous chapter 11 case to have any fees reviewed. Further, the

debtor never made any claim in relation to the Chapter 11 against any defendant and did not

schedule any claim in her previous chapter 13 or the current underlying chapter 13.  In fact the

debtor has not scheduled any potential claim against TB or BBLLP to this day in any schedules

that have been filed or amended.

## II.  BACKGROUND

1.        On March 13, 2015, the above-captioned Debtor filed a Chapter 13 petition

through her counsel, under case number 15-08916.

2.        On May 12, 2015, the above-captioned Plaintiff filed the above captioned Adversary Proceeding, ("AP-1") through her counsel, case number 15-A-00314 with an attached exhibit list.

3.        On May 21, 2015, the above-captioned Plaintiff, through her counsel, filed and amended Complaint in the above captioned Adversary Proceeding, ("AP-2" or "Complaint") and eliminated any exhibits that had been filed and did not file any other exhibits.

4.        On or about November 9, 2012 debtor retained defendant J. Kevin Benjamin to represent her generally in her restructuring of her debts and they entered into a written agreement establishing what would be their course of dealing, ordinary business practices and establishing what future hourly rates and billing procedures may be.

5.        On our about January 7, 2013 debtor retained J. Kevin Benjamin to represent her in an individual chapter 11 and in there course of dealing and regular business practice debtor paid the balance due on the previous retainer agreement before J. Kevin Benjamin would represent debtor in the new matter and entered into a written fee agreement setting forth the hourly rates and billing procedures.

6.        A week or so later debtor needed an emergency filing and paid and additional $4,000.00 and filing fee of $1,213.00 to JKB.  JKB even further credited her $2,000.00 for fees already earned the previous two months on the previous retainer as debtor needed to file quickly.

7.        JKB filed the chapter 11 for the debtor as promised and then learned that the debtor's check for $1,213.00 had been returned NSF.  As debtor was a former CEO of a bank it was pretty obvious that the debtor new the check was no good and would not clear but fraudulently induced JKB to file her chapter 11 and represent her in an individual chapter 11 under false pretenses.

4

8.          JKB represented debtor in her chapter 11 which turned complicated and debtor arranged a co counsel on the chapter 11 with debtor's consent and a joint motion to employ was set before Judge Hollis.

9.          At the motion to employ the co counsel had omitted his affidavit and Judge Hollis continued the motion.  Prior to the motion being heard again debtor sent co counsel a disparaging e-mail/text and co counsel would was no longer willing to represent debtor along with JKB.

10.          JKB still represented debtor despite not being paid as agreed and being defrauded by debtor.  JKB represented debtor at the initial debtor interview and the 341 meeting of creditors with the UST.

11.          After the meeting JKB met with debtor and debtor disclosed some things that she had not disclosed previously and JKB counseled debtor, again, relating to bankruptcy fraud and perjury and stated what was needed and that certain amendments would need to be filed and disclosed or JKB would have to withdraw.

12.          Subsequently the UST filed a motion to dismiss or convert to chapter 7 which terrified the debtor as she feared being liquidated.  JKB wound up filing some of the amendments prior to the motion to employ being heard again and debtor told JKB to not file the rest and she was hoping to have your case dismissed.

13.          JKB appeared on the motion to employ and the UST and told Judge Hollis that there was also a pending motion to dismiss and with the UST present we asked that it be dismissed.

14.          However since the UST motion to dismiss was not noticed for that day Judge Hollis indicated that it would be dismissed on the day the motion was noticed for and asked what we wanted to do on the motion to employee and JKB replied that since it was going to be dismissed there was no point being employee and indicated that the employment motion was

moot and withdrew it.  Judge Hollis agreed and the motion was withdrawn as moot.

15.        Debtor never questioned JKB's attorney fees in the chapter 11 and was happy the case was dismissed and had wanted me to withdraw my motion to employee in the hope it would help her have her case dismissed.

16.        Later that year debtor again requested JKB's assistance in filing bankruptcy and again it was to be right on the eve of a sale.  JKB told debtor he would not represent her in a chapter 11 and debtor did not want that anyway.  JKB stated they could enter into a written chapter 13 retainer agreement, as was what the debtor and JKB had done in their regular course of business and prior business dealings and which retainer set forth the hourly rates and billing practices.

17.        JKB told debtor he would file the chapter 13 BUT HE WOULD NOT file or present a motion to extend the automatic stay and explained to debtor there would be no automatic stay and JKB explained that he could not sign a motion to extend and claim it was a good faith filing if the debtor was again filing on the eve of the sale and had not fully disclosed everything to JKB initially and prior to her previous chapter 11 filing.

18.        Debtor had no problem with any of that and debtor never said anything about any previous chapter 11 fees and nothing in her schedules made any claim against JKB, BBLLP, TB or anyone.  About a year and a half later the debtor had her chapter 13 dismissed for non-payment.

19.        JKB and debtor discussed re-filing and also reinstating the BK.  Then debtor advised JKB of a change in circumstances, new unsecured debt, new IRS debt, new real estate taxes and an immediate pending large debt to her HOA and also indicated a major problem with a creditor BCS Services who was not previously a creditor.  JKB advised debtor for all these reason the case should NOT be reinstated and should be refilled and debtor agreed.

20.        As in the established business practices between the parties and course of

dealing in the past JKB advised debtor he needed to get paid for his work prior to allowing her

to retain JKB for a new chapter 13 in which after being paid for earned fees JKB would file

basically nothing down and get paid later, like JKB had been doing in his course of dealing with

debtor.  In agreeing to represent debtor on those terms JKB agreed to discount his earned fees

and upon payment began to undertake his due diligence and begin drafting the new filing and in

doing so established new value with the contemporaneous exchange of payment for previous

earned fees.  Debtor asked JKB for an invoice and time sheet and debtor and JKB discussed it

on the phone and well and it was agreed to and sent out.

21.     Debtor made a $4,000 payment in November to JKB for legal fees due, asked to

make payment arrangements and was told that JKB needed to get paid in full as to the agreed

discounted amount prior to filing any new petition which debtor was pushing to file right away.

JKB advised debtor the money held by the Chapter 13 trustee would be returned and when it

was not promptly returned he contacted the trustee at the debtors request to expedite it on behalf

of debtor who got her check directly from the trustee and did not turn it over to JKB.

22.     Subsequently the debtor paid the balance due without any settlement or

collection activity or changes in any previous manner of doing business that had been

established and she did so under her own free will with no problem as to any invoice and again

never said anything about any legal fees from the prior chapter 11 case (the one she induced

JKB to file under false pretenses and with a bad check).

23.     JKB worked on the new case for several months and again asked debtor in

March of 2015 when certain documents and CCC would be forthcoming as debtor kept saying

she would do and JKB said the case could not be filed without.

24.     On March 11 JKB again contacted debtor about the information and several

hours later debtor stated she hired a new attorney and thanks JKB for his help and never said

anything about any legal fees from the prior chapter 11 or from the prior chapter 13 or for any

payment made voluntarily by debtor in November and December of 2014, in which both cases debtor knew payments was for JKB and not for any chapter 13 trustee or any reinstatement of any prior chapter 13.

25.     Several days later, about March 15, 2015 debtor filed Chapter 13 with the new attorney, David Llyod who did no due diligence, no document preparation, no review with debtor but by David Lloyd's own admission just took the almost 2 year old petition JKB had filed in the previous case and hurriedly filed it so that he could make a preference claim (filed on the 88th day) and the only work David Lloyd did on that Chapter 13 was to fraudulently omit certain creditors and claims, and intentionally alter the personal property values on schedule B substantially in order to set up his fraudulent attempt at a preference action against JKB.

26.     Several days later David Lloyd sent a demand letter to JKB despite the fact all the schedules had not been filed and the Chapter 13 trustee had no opportunity to review or chime in on any alleged preference, in the hopes that the debtor would be able to "steal" what he was alleging was property of the estate as the demand letter asked for the money to go to him for the debtor, not the estate.

27.     When JKB did not pay subsequently debtor filed an adversary complaint, and though debtor had alleged the preference action and another made up claim for $4,000 on schedule B against JKB, the debtor and Lloyd filed the adversary complaint and named Benjamin Brand LLP and Theresa Benjamin, who both the debtor and Floyd know is the wife of JKB and they did so in the hopes that JKB would then cough up money to the debtor that WAS NOT AND IS NOT OWED to the debtor and whose attempt is and was nothing short of a criminal extortion attempt.

28.     Further though the demand letter never indicated any issue with the previous chapter 11 representation or legal fees in that chapter 11 the debtor and Floyd added that to the adversary complaint even though it was not proper and even though the debtor and Floyd had

8

1   never made the claim before and had not, and still have not, scheduled it on Schedule B of the

2   debtors petition.

3                                           **ARGUMENT**

4       **I.        Count I:  Avoidance And Recovery of Preference:  11 U.S.C. § 547(b) and §**
5                   **$550(a) should be dismissed against all Defendants.**

6               **A.        The Plaintiff (Chapter 13 Debtor) lacks statutory authority to**
                           **exercise avoidance powers.**
7           The general rule stems from a strict reading of the Code: The Chapter 13 debtor lacks a

8   statutory grant of authority to exercise avoidance powers. § 1303 governs the rights and powers

9   of the Chapter 13 debtor.   Notwithstanding that 11 U.S.C.  §  1303 expressly grants the

10  Chapter 13 debtor powers also conferred on the trustee, it does not grant the trustee

11  avoidance powers. 11 U.S.C. § 1303 reads in pertinent part: "the [chapter 13] debtor shall have,

12  exclusive of the trustee, the rights and powers of a trustee under [certain][sub]sections [of

13  363]." 11 U.S.C. § 1303 (2000). 363(1) governing the powers to use, sell, or lease property.

14

15  11 U.S.C. § 1303 (2000).

16              **B.        If at all, the Plaintiff may only exercise avoidance powers in**
                           **relation to a transfer of property of the debtor to the extent that the debtor**
17                         **could have exempted such property under subsection 522 and the debtor**
                           **has not done so.**
18

19          The Code provides limited powers to the Chapter 13 debtor to avoid liens and transfers

20  through the use of § 522 exemptions. However, there is no consensus in the courts as to whether

21  the Chapter 13 debtor should possess the full grant of avoidance powers or the limited power to

22  avoid liens and transfers that are exempt under § 522.

23

24          Most courts, even when applying the plain meaning of § 1303, are willing to grant the

25  Chapter 13 debtor the use of the trustee's avoidance powers to the extent they are used in

26  conjunction with the power given the debtor in §522(h). To the extent property would otherwise

27  be exempt, § 522(h) permits the debtor to recover involuntary transfers of property that the

28

trustee could have avoided, but failed to do so.   See Barclays Am. Mortgage Corp. v. Wilkinson

(In re Wilkinson), 186 B.R. 186, 191 (Bankr. D. Md. 1995) (reasoning that § 544 "strong arm"

power is not part of the list in § 1303, "[therefore, a plain reading of section 1303 indicates that

a Chapter 13 debtor does not have the authority to exercise the 'strong arm' powers.").

**C.     Avoidance was never meant for the benefit of the debtor but is preserved for the estate's benefit.**

Beyond the obvious lack of any statutory grant to the Chapter 13 debtor previously

discussed, there are other plausible arguments for denying the debtor these powers. One is that

they were never meant to benefit the debtor, rather, they are preserved for the estate's sake. See,

e.g., In re Redditt, 146 B.R. 693, 701 (Bankr. S.D. Miss. 1992); In re Driver, 133 B.R. 476, 480

(Bankr. S.D. Ind. 1991); In re Tillery 124 B.R. 127, 128-29 (Bankr. M.D. Fla. 1991); In re

Chapman, 51 BR. 663, 666 (Bankr. D.D.C. 1985).

In the Movants motion to dismiss the Movants addressed the issue of Standing. Plaintiff

responds to the Standing allegations by stating that the Chapter 13 Debtor has standing to pursue

claims of the bankruptcy estate and cites In Cable v. Ivy Tech State Coll., 200 F. 3d (7th Cir.,

1999) and even quotes directly from that case the following section:

> "Chapter 13 grants the debtor possession of the estate's property, 11 U.S.C. §
> 1306(b), which is defined by § 541 to include "all legal or equitable interests
> of the debtor in property as of the commencement of the case." 11 U.S.C. §
> 541(a)(1). The phrase "legal or equitable interests ... in property" includes
> *473 choses in action and other legal claims that could be prosecuted for
> benefit of the estate. See In re Smith, 640 F.2d 888 (7th Cir.1981) ("All
> causes of action become property of the estate under section 541."); see also
> Bauer v. Commerce Union Bank, 859 F.2d 438, 441 (6th Cir.1988); In re
> FBN Food Serv., Inc., 185 B.R. 265, 273 (N.D.Ill.1995); In re U.S. Marketing
> Concepts, Inc., 113 B.R. 487, 490 (Bankr.N.D.Ind.1990). The chose in action,
> here a discrimination case, belongs to the estate and **was being prosecuted
> for the benefit of its creditors**. It would frustrate the essential purpose of §
> 1306 to grant the debtor possession of the chose in action yet prohibit him
> from pursuing it for the benefit the estate."

The very case that Plaintiff cites in distinguishable to the current case at hand as in

1  *Cable* was a claim that clearly belonged to the estate and was **being prosecuted for the benefit**

2  **of the creditors**.  In the complaint filed by Plaintiff, Count I claims an avoidance action for

3  recovery of an alleged preference under § 547(b) and § $550(a).  §550(a) clearly states that a

4  "*trustee may recover , for the benefit of the estate, the property transferred ……*"  Yet in the

5  complaint filed by the Plaintiff in relation to Count I, plaintiff prays for , among other things,

6  that the "***Debtor recover from said defendants a judgment in the amount of $14,000.00 plus***

7  ***costs.***"  Thus by Plaintiff's own admission in its reply Plaintiff does not have proper standing to

8  bring the claim as by Plaintiff's own admission, and the very case law and section cited by

9  Plaintiff, a preference action in this instance would need to be prosecuted on behalf of the estate,

10 which clearly plaintiff is not doing.  Thus Plaintiff is acting improperly, without standing, and

11 against the very authority it cites.

12

13          In fact Plaintiff conveniently leaves our a very important part of the *Cable* decision.  The

14 court in *Cable*, goes on to state that the trustee may bring actions only for the benefit of the

15 estate, rather "***plan specifically directs that the potential proceeds from Cable's Title VII claim***

16 ***benefit the estate and its creditors.***"  In the instant case Plaintiff is only attempting to benefit

17 the debtor herself, and not the creditors or the estate of the debtor.

18          **D.     The funding source for a chapter 13 plan is not derived from voidable**
19          **liens and transfers.**

20

21          Another, and building upon the first, is that the funding source to pay creditors is, for the

22 most part, not derived from voidable liens and transfers. Therefore, the debtor should not be

23 granted the authority to do so. See In re Redditt, 146 B.R. at 701.

24          **E.  Any avoidance powers afforded to the debtor are specifically**
25          **granted in § 522.**

26

27          A third argument is that any avoidance powers afforded to the debtor are specifically

28 granted in § 522. See 11 U.S.C. § 522. This section provides the necessary powers to protect

otherwise exempt property.

In the underlying chapter 13 the debtor filed schedule B and listed a potential contingent and unliquidated claims against Defendants JKB for (1) funds allegedly paid to his account for transmittal to trustee in prior Chapter 13 in the amount of $4,000.00, and (2) further alleged another claim against defendant JKB for "fees paid after closing of prior chapter 13," in the amount of $14,000.00.

In the underlying chapter 13 the debtor filed schedule C and listed a potential exemption for the first claim in the amount of $500.00 (not $4,000.00) and in the second claim listed a potential exemption of $500.00 (not $14,000.00).

Therefore the debtor has not, and does not, claim an exemption for either claim.  As neither alleged claim is exempted by the debtor even if the debtor was granted avoidance powers in accordance with 11 U.S.C. § 522 it would not have the standing to exercise it.

In addition the adversary complaint filed by the debtor clearly attempts to make a claim for the debtors personal benefit, and not for any benefit of the creditors and thus the debtor lacks standing and any authority to claim a preference under § 547(b) and avoid it under § $550(a) as the debtors adversary complaint specifically is trying to do. The chapter 13 proposed plan of the debtor does not even attempt to claim the avoidance of any alleged claim or claims would be turned over to the chapter 13 trustee or needed to fund the chapter 13 plan as proposed and in any case the funding of the chapter 13 plan should not be derived from alleged voidable transfers.

**F.     The Court Lacks Jurisdiction Over the Preference Claim as it is not part of the claims-allowance process subject to resolution by the bankruptcy court.**

In Movants motion to dismiss it showed that the bankruptcy court does not have jurisdiction over an alleged preference claims that was not, and is not, part of the claims-allowance process which the court would have jurisdiction over.

In fact the debtor has stated to this honorable court, in writing, and orally that none of the Movants are even a creditor of the debtor, and the debtor has not scheduled any of the Movant's as a creditor, nor have any of the Movants filed a proof of claim.  Thus there is no claims process or claim to resolve between the debtor and any of the movants and thus the bankruptcy court lacks jurisdiction in this matter as the alleged preference action is unrelated to the claims process.

Movant has no response to Movants position in this regard other then to cite authority in its motion to dismiss (page 9 and 10 and paragraphs 15 and 16) and in its response (the last 2 paragraphs on page 4 and the first sentence on page 5) citing In re Kimball Hill Inc., 480 B.R. 894 (Bk., N.D. Ill. 2012) and quotes Judge Barnes by stating "The number of courts who have rejected a Stern Challenge to the bankruptcy court's authority to enter final orders on a fraudulent transfer claim is, to the least, quite large."

The debtor response shows the debtor does not grasp the concept that Count I of the debtors own adversary complaint alleges a claim to avoid a preferential transfer under § 547(b) of the bankruptcy code and does not seem to understand that a preferential claim is not the same thing as a fraudulent transfer claim under section § 548 of the bankruptcy code, thus debtors response to defendants motion to dismiss Count I is not only totally without merit, but the response quoting Judge Barnes and his statement relating to fraudulent transfers just show the debtor has no clue as to what they even claimed in the adversary complaint filed by the debtor and is further evidence that they have not stated a claim in which relief can be granted as the debtor does not even understand the claim they are making.

**G.     The Debtor has No Standing to bring a Preference Claim against Non-Disclosed Claims Against either Defendants Theresa Benjamin or Benjamin Brand LLP.**

In Particular and in relation to Defendants Theresa Benjamin and Benjamin Brand LLP

the debtor states no fact to support any claim that can be made against Benjamin Brand LLP or Theresa Benjamin.  By the debtors own schedules filed in the underlying case no claim is made against Benjamin Brand LLP on schedule B and no claim is alleged against Theresa Benjamin in schedule B either.  As no claim is made against Theresa Benjamin or Benjamin Brand LLP in the underlying and related chapter 13 the debtor has no standing to attempt to make an allegation against Theresa Benjamin or Benjamin Brand LLP in complaint filed against them yet the debtor and debtor's counsel filed it anyway.

In addition, the debtor only makes a few conclusory statements in the amended complaint in its "factual allegations common to all counts" section of the adversary complaint, in relation to Theresa Benjamin and Benjamin Brand LLP, none of which have anything to do with a preference claim, nor does the debtor allege any facts to relate any element of a preference claim to Theresa Benjamin or Benjamin Brand LLP.

In fact under Count I of the debtor's adversary complaint any alleged specific claim only references defendant J Kevin Benjamin and not any other defendant.  Theresa Benjamin and Benjamin Brand LLP are only referenced in paragraph 16 and 17 where debtor claims a debt was owed to Benjamin Brand LLP and Theresa Benjamin and J Kevin Benjamin.  In paragraph 17 debtor claims a payment was made for the benefit of J Kevin Benjamin, Theresa Benjamin, and Benjamin Brand LLP.

However in paragraph 14 and 15 the debtor alleges that she paid Kevin Benjamin (only) and references an exhibit A that is not attached to any complaint as the amended complaint specifically seemed to discard any exhibit as part of the complaint filed by the debtor.  There is no evidence to support that any payment was made to Theresa Benjamin or Benjamin Brand LLP as by the debtor's own admission in paragraph 14 of the amended adversary complaint it specifically indicates that NO PAYMENT was made to Benjamin Brand LLP or Theresa Benjamin. Therefore as to Benjamin Brand LLP and Theresa Benjamin there can be no

preference to avoid or recover since no payment was made to Benjamin Brand LLP or Theresa Benjamin nor did Theresa Benjamin or Benjamin Brand LLP receive any payment from debtor for their benefit that went into any account of Benjamin Brand LLP or Theresa Benjamin.

Therefore the amended complaint does not state any claim against Theresa Benjamin or Benjamin Brand LLP that either of those defendants could even attempt to file an answer or figure out what the debtor is talking about in relation to any preference claim against either of them.

It is obvious that the only reason Benjamin Brand LLP and Theresa Benjamin LLP were named as defendants was to harass Benjamin Brand LLP and Theresa Benjamin and that the adversary complaint was filed against them with no due diligence done by Attorney David Lloyd and in violation of rule 9011 and with no basis in fact.

**H.    The Debtor cannot bring an avoidance action since the debtor appears to be solvent.**

In fact Plaintiff's schedule A, filed March 13, 2015, claims an ownership interest in a condominium with a value of $850,000.00 and a secured lien in the amount of $586,853.19, leaving equity in the amount of $263,146.81.  However as you can see by the attached **Exhibit A** made apart of this reply, the December 15, 2015 letter of opinion from Coldwell Banker puts the value more around $875,000 with a maximum high of $919,000.00. This would increase the equity to at least $288,146.81 or as high as $332,146.81.

The debtor filed schedule B on or about March 13, 2015 and listed **$47,900.00** in claimed assets.  The debtors schedule B listed furniture and household goods in the **amount of $4,000.00** and books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles, fine art paintings, collectibles, persian rugs antique china in the **amount of $15,000.00** and furs and jewelry in the **amount of $9,000.00,** specifically stating the debtor owned 5 fur coats and jewelry, included in the total personal

1  property listed of **$47,900.00.**

2        However, in debtors previous chapter 13 (case number 13-29200) debtor filed schedule

3  B on or about August 13, 2013 and in her schedules debtor claimed furniture and household

4  goods in the **amount of $10,000.00** and books, pictures and other art objects, antiques, stamp,

5  coin, record, tape, compact disc, and other collections or collectibles, fine art paintings,

6  collectibles, persian rugs antique china in the **amount of $55,000.00** and furs and jewelry in the

7  **amount of $120,000.00,** specifically stating the debtor owned 5 fur coats and jewelry, included

8  in the total personal property listed of **$154,160.00.**   Moreover the debtor stated she had a

9  personal property insurance policy with Travelers Insurance for **$120,000.00**, which was

10  itemized as **$40,000.00** for the furs and **$80,000.00** for the debtor's jewelry.

11
12        Mysteriously in both the current underlying chapter 13 and the previous chapter 13 of

13  the debtor, she claims 5 furs and jewelry yet somehow the furs and jewelry that were insured for

14  a value of **$120,000.00**, somehow were only worth **$9,000.00**, and of course there is no mention

15  from the plaintiff/debtor or plaintiff/debtor's counsel of the personal property insurance policy

16  or how the fur coats and jewelry suddenly lost so much value so quickly?  Nor is there any

17  indication of any jewelry was sold, and if so for how much and where did the money go?

18        If that is not bad enough the debtor prepared and had sent to the Internal Revenue

19  Service a declaration of insolvency that was prepared on October 14, 2013 by her accountants at

20  Pavlatos & Louizos, Ltd., a copy of which is attached as **Exhibit B, attached hereto and made**

21  **apart hereof,** that stated her personal property (art, jewelry, etc) was worth **$194,430.00**!  The

22  debtor/plaintiff claimed she had assets at that time of $**201,440.00!**   Somehow the debtor

23  "forgot" she has an interest in real estate of what may now be as high as $**919,000.00**, which

24  would make her assets over **$1,120,440.00**!

25        She claimed she owed attorney fees at the time of $14,546.00, $160,532.00 in credit

26  card debt (that is not schedules on her current schedules nor have any proof of claims been filed

27

28

anywhere near that amount for credit cards where only around $27,000 of credit card related proof of claims have been filed), and $887,000.00 in notes payable.  In relation to the notes payable the debtor/plaintiff through debtor/plaintiff's counsel filed a response to the original chapter 13 trustee motion to dismiss for being over the debt limits (filed May 19, 2015 in the current chapter 13) and explained that the many notes payable were really not notes payable as they were really gifts and that it was just a mistake to have filed those and that she does not owe those debts.

On information and belief (debtor/plaintiff has previously indicated to defendant JKB that the insolvency statement had been filed on her behalf with the IRS because her accountant told her she would not have to pay certain IRS tax obligations if she was insolvent at that time).

Thus it appears the plaintiff/debtor prepared a false insolvency statement with the IRS intentionally omitting any real estate interests and equity (which she claims in her current chapter 13),  grossly overstated "notes payable", so that liabilities would appear to be more then assets (which were not fully disclosed either) executed it, and fraudulently claimed insolvency to the IRS for the year 2014.  The Chapter 13 trustee should be in possession of the 2014 tax returns, which may indicate if she in fact committed fraud on the IRS and the US Bankruptcy Court.

But the plaintiff is NOT insolvent.  She has assets of as much as **$1,120,440.00**, if not more, and her originally filed schedule D claimed secured debt of $586,853.00, schedule E, as amended, claims $15,789.48, and schedule F, as amended, claims $320,000.40 for a total debt claimed by plaintiff/debtor's schedules of around $922,642.88 which would make **her assets exceed her liabilities buy almost $200,000!**

Of course there is no way to know for sure as debtor/plaintiff keeps filing different amounts of assets and liabilities to the extent it serves her purposes with the IRS, tax breaks, or the US Bankruptcy Court, or to prevent the Chapter 13 trustee from having her case dismissed

or converted to chapter 11, so there is no way to really know with such a dishonest plaintiff.

However, any presumption of insolvency that may have been afforded the plaintiff is certainly rebutted by these factual statements made by Movant and supported by documentation and public records.

In fact the plaintiff never even made an allegation of insolvency, let alone showed any support for that and the issue of insolvency is vital to any claim of preference under § 547(b), which the plaintiff asserts is her cause of action under Count I.   Thus plaintiff has not plead any facts or even made any proper claim under a preferential transfer in accordance with § 547(b), and thus Count I should be dismissed for failure to plead a proper claim in which relief can be granted.  Further it should be dismissed as Count I claim also makes a claim under § 550(a), and plaintiff has already admitted, in the authority it cites in its response, that § 550(a), that any standing to make a claim would be needed to be made for the benefit of the estate and plaintiff is only attempting to assert a false claim of preference, by and through fraudulent bankruptcy filings, for the benefit of herself, and not the estate and thus plaintiff lacks standing to even bring her fraudulent and improper adversary complaint in the first place.

**I.      An avoidance claim is not accomplished until the creditor receives what is entitle to under a confirmed plan and the debtor receives a discharge and debtors chapter 13 plan does not appear confirmable thus an avoidance action should be disallowed.**

A distinction worth noting specific to Chapter 13, is that the avoidance is not accomplished until the creditor receives what it is entitled to under a confirmed plan and the debtor has received a discharge. 11 U.S.C. § 1328(a) (2000) (providing for the discharge of debtor after completing the payment plan under Chapter 13); In re Stroud, 219 B.R. 388, 390 (Bankr. M.D.N.C. 1997).

This prevents the creditor from being deprived of the asset in the event the debtor's bankruptcy is dismissed and the creditor's lien is then reinstated. In re Stroud, 219 B.R. at 390;

see 11 U.S.C. § 1328(a) ("As soon as practicable after completion by the debtor of all payments under the plan ... the court shall grant the debtor a discharge of all debts provided for by the plan .... "). But see 11 U.S.C. § 349(b)(1)(B) (2000) (stating that "any transfer avoided under section 522, 544,545,547, 548, 549, or 724(a) ... is reinstated"). In re Stroud determined that this reinstatement would be worthless to the creditor if the debtor had received an avoidance of the lien, sold the property, and had his case dismissed. 219 B.R. at 389. 62. See In re Stroud, 219 B.R. at 389-90.

If the debtor sold the property between avoidance and dismissal of the case, the creditor would have nothing to show for the reinstated lien. See In re Stroud, 219 B.R. at 389-90.  These powers, while valuable, obviously fail to provide the Chapter 13 debtor with the ability to fully avoid certain transfers or liens, irrespective of whether the property is exempt.

In the case at hand the chapter 13 has yet another motion to dismiss the debtors chapter 13 plan scheduled for September 30th, after the chapter 13 trustee caught the debtors in some "non disclosure" activity.

**II.     Count II:  Recovery of Money Owed To the Estate:  11 U.S.C.:  11 U.S.C. § 542(b) should be dismissed against all Defendants for failure to state a claim in which relief can be granted.**

In Count II of the debtors adversary complaint debtor alleges that money is owed to the estate by defendant J. Kevin Benjamin.  Count II does not even mention Theresa Benjamin or Benjamin Brand LLP.  As a matter of fact in the response filed by the debtor to the Movants motion to dismiss the debtor does not even mention Theresa Benjamin or Benjamin Brand LLP. Therefore there is no proper claim made against Benjamin Brand LLP or Theresa Benjamin in which relief can be granted, nor is there anything to respond to by either Theresa Benjamin or Benjamin Brand LLP and thus Count II should be dismissed with prejudice against debtor as that Count was also filed against Theresa Benjamin and Benjamin Brand LLP in violation of

Rule 9011 and with the intent to purely harass, defame and slander.

As to defendant J. Kevin Benjamin Count II should also be dismissed with prejudice. Bankruptcy Rule 7001 governs adversary proceedings and states 10 specific claims that are adversary proceedings.  Recovery of money under 11 U.S.C. § 542(b) IS NOT an claim that falls under bankruptcy rule 7011 related to adversary proceedings and thus the debtor has no standing to bring the cause of action as indicated in Count II against defendant J. Kevin Benjamin (or any of the defendants for that matter).

The complaint does not cite or even allege any proper authority that would grant the bankruptcy court jurisdiction in this matter (related to Count II).  In fact debtor does not even respond to Movants motion to dismiss related to Count II for lack of standing and jurisdiction, other then to allege in her response that Count II allegedly is specific against defendant J. Kevin Benjamin (does not mention the other defendants) and "concludes" that the false allegations against J. Kevin Benjamin are not "conclusory" because debtor 'concludes" that the "statements in Count II, IF taken as true, establish a claim against defendant J. Kevin Benjamin."

However Count II references 11 U.S.C. § 542(b).  11 U.S.C. § 542(b) refers to a "debt" that is owed that is property of the estate.  Debtor makes no allegations or any factual statements to support any debt is owed to debtor by J. Kevin Benjamin or any of the defendants.  In fact the adversary complaint itself falsely claims that the "debt" would be owed to the chapter 13 trustee as property of the estate of a previous chapter 13 and the debtor alleges a payment was made to J. Kevin Benjamin to be paid to the Chapter 13 Trustee in the former case but at the same time debtor states that alleged cashiers check was returned to debtor and debtor issues a payment to J. Kevin Benjamin specifically and not to the Chapter 13 trustee and references an exhibit B that is not attached to the amended adversary complaint and in any case by debtors own admission only one check was paid to J. Kevin Benjamin and it was on a date AFTER the previous chapter 13 had been dismissed and after the debtor knew it was dismissed.

20

There are not factual allegations to support any claim that any payment that was cashed was to be paid to a third party and there are no factual allegations to support that a debt is owed by J. Kevin Benjamin to the debtor in the first place or that would be considered property of the estate of the current chapter 13 under 11 U.S.C. § 542(b) and even in the event a claim could be made the debtor shows no jurisdictional support or standing to show that it is a proper claim to be made in an adversary proceeding when bankruptcy rule 7001 specifically DOES NOT list 11 U.S.C. § 542(b) claims as a claim that can be made in an adversary proceeding.

Lastly even though it is not the Movants burden at this stage to prove their claim, Movants, nonetheless are attaching as e-mails as **Exhibit C**, and made apart of this reply, from November 17, 2014 – March 11, 2013 that clearly show that the debtor, Faye Pantazelos, at the time of making the $4,000 payment to JKB, did not think it was for the Trustee and knew specifically it was a payment towards earned fees and that further in order to have JKB represent her again in a new chapter 13 filing, as she requested, she would have to pay MORE THEN the $4,000.00 payment.

The e-mails show she was aware, and requested, an invoice for the balance due that would need to be paid for prior representation, that she agreed with the amount and she on numerous occasions tried to get JKB to represent her again WITHOUT being paid in full but JKB would not do so as he was sticking to the established business practice and course of dealing with the debtor and which said practice was also the normal practice in the industry. However the e-mails clearly show she wanted to re-file (not reinstate) and she knew her previous chapter 13 was dismissed and she on numerous occasions asked when JKB could re-file her case, authorized JKB to begin representation and due diligence and that JKB helped her get her check from the Chapter 13 Trustee and thus when she paid JKB for his work in the previous chapter 13 she did so with full knowledge that her prior chapter 13 was dismissed and was not being reinstated.

Thus all the allegations in Count II and Count III are based upon false misrepresentations to the court and done so with full knowledge that they are false and with the intention of Faye Pantazelos to deceive and defraud the court and all the defendants, which appears to be par for the course so to speak as she has committed bankruptcy fraud when she filed her underlying chapter 13 and did so with the help and assistance with Attorney David Llyod whom it appears is representing the debtor in the complaint on a contingency basis but has not disclosed his contingency arrangement or contract in violation of local rules requiring disclosure of contingency fee arrangements.

In fact David Llyod has not filed his retainer agreement in the underlying chapter 13 case in violation of the local rules and since the numbers on #9 of SOFA do not match the 2016 fee disclosure that he filed (without attaching the retainer agreement) no one really knows what he is doing with the debtor as far as payment arrangement in both the underlying chapter 13 and the complaint.

**Count III: Debtor's Transactions with Attorneys should be dismissed against all Defendants for failure to state a claim in which relief can be granted.**

As stated previously Bankruptcy Rule 7001 governs adversary proceedings and states 10 specific claims that can be filed as adversary proceedings. Debtor does not even allege in Count III that this Count III is even related to a proceeding under Rule 7001 related to adversary complaints and thus should be dismissed as to all defendants.

In fact in debtors response debtor now alleges that the prior chapter 11 case before Judge Hollis should be reviewed by this court under § 329 and for the first time now alleges this court has jurisdiction pursuant to § 329 to review a case that was before Judge Hollis 2 ½ years ago. This is a new allegation made by debtor and was done so without leave of court. Nonetheless it too would be without merit, if it had even been properly and timely alleged in the complaint (it was not) as again debtor gives not underlying factual support to indicate why this court would

have jurisdiction under § 329  instead of Judge Hollis or whey do they not move to reopen that case under Judge Hollis?

It appears that attorney David Lloyd's undisclosed contingency fee arrangement may be getting in the way of the fact, procedures, the bankruptcy rules, bankruptcy code, local rules and the truth!


WHEREFORE, Movant respectfully requests that this Honorable Court enter the attached proposed order: (a) granting this Motion to Dismiss with prejudice; (b) referring the debtor and attorney David Llyod to the US Trustee for potential bankruptcy fraud; (c) a referral to Judge Black under local rule 9029(4-B) to initiate an investigation of attorney David Llyod; and (d) to have and such other and further relief as the nature of this case may require as is just.


Dated this 15th Day of September 2015


Respectfully submitted,


By: /s/ J. Kevin Benjamin
Attorney for Defendants




J. Kevin Benjamin, Esq.
Benjamin | Brand | LLP
1016 West Jackson Blvd.
Chicago, Illinois 60607-2914
Phone:  (312) 853-3100
ARDC #: 6202321