United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>Faye T. Pantazelos,<br><br>Debtor. | Bankruptcy No. 15-bk-08916<br><br>Chapter 13 |
| Faye T. Pantazelos,<br><br>Plaintiff<br><br>v.<br><br>J. Kevin Benjamin and Benjamin Brand, LLP,<br><br>Defendants. | Adversary No. 15-ap-00314 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEBTOR'S ADVERSARY COMPLAINT TO AVOID AND RECOVER PREFERENCE AND OTHER RELIEF (COUNT 1)**

Faye T. Pantazelos filed a petition for bankruptcy relief under Chapter 13 of Bankruptcy Code.  She then brought this adversary proceeding against her former attorneys in prior bankruptcy cases, J. Kevin Benjamin, Theresa Benjamin, and the firm of Benjamin Brand, LLP, seeking: (Count 1) avoidance and recovery of an allegedly preferential payment of $14,000 claimed to have been made within 90 days of filing her bankruptcy case on account of legal fees owed at the time; (Count 2) turnover of $4,000 claimed to have been intended to be paid to reinstate her previous bankruptcy case but instead was retained by the Defendants, and; (Count 3) examination of the fees paid or agreed to be paid to the Defendants for representation in a prior case.

Trial on the adversary claims was held over the course of four afternoons.  Before the close of the Plaintiff's case, and upon oral motion of counsel for the Plaintiff, Count 3 was dismissed with prejudice. [Dkt. No. 85.]  Plaintiffs also voluntarily dismissed all remaining counts against one of the original defendants, Theresa Benjamin, and she has been dismissed from this proceeding. [Dkt. No. 107.]

At the close of the evidence, all parties having rested and final oral arguments having been heard on Count 2, Findings of Fact and Conclusions of Law were made and entered on Count 2 seeking turnover of $4,000. For reasons stated from the bench, relief sought in Count 2 was entirely denied with entry of judgment for the Defendants. [Dkt. No. 103.]

Plaintiff's remaining count seeking avoidance and recovery of an allegedly preferential transfer of $14,000 set forth in Count 1, and Defendants' asserted defenses to that claim, were taken under advisement after final argument. Findings of Fact and Conclusions of Law as to Count 1 are now hereby made and entered.

Plaintiff's complete trial exhibits, identified and marked as Plaintiff's Exhibits 1 through 33 [See Dkt. No. 73], were entirely admitted into evidence at trial, Defendants made no timely objection to exhibits identified prior to trial, and any oral objections to Plaintiff's offer of her exhibits into evidence were heard, considered and, for reasons stated on the record, entirely overruled.

For reasons stated below, Plaintiff has met her burden of proving a voidable preference pursuant to 11 U.S.C. § 547(b) with respect to a $14,000 payment for legal fees due when such payment was made less than 90 days before the bankruptcy case was filed. Defendants, in turn, have failed to establish any exception to avoidance under 11 U.S.C. § 547(c). Plaintiff has also established a right to recover the avoided transfer for the benefit of the estate pursuant to 11 U.S.C. § 550, and Defendants have not established any defense to recovery under that provision.

Accordingly, Judgment on Count 1 will separately be entered in favor of the Plaintiff for avoidance and recovery of the $14,000 preference from the Defendants.

## FINDINGS OF FACT

Plaintiff, Faye Pantazelos (the "Debtor") is the debtor in the above-captioned Chapter 13 bankruptcy case, no. 15 B 08916, and had previously been a debtor in two

other bankruptcy cases filed by her in 2013—first under Chapter 11 and then under

Chapter 13—which had both been dismissed before her current bankruptcy case was

filed in March of 2015. Defendants, Kevin J. Benjamin ("Benjamin") and the law firm of

Benjamin Brand LLP ("BBLLP"), provided legal services to the Debtor in connection

with her two prior bankruptcy cases. Benjamin, a licensed attorney authorized to

practice law in Illinois, is a partner in BBLLP. Within the 90 days immediately

preceding the filing of Debtor's pending bankruptcy case, she owed a debt for legal

services rendered in her prior case, and she paid an agreed amount on the balance of

such fees by making a $14,000 payment to and for the benefit of the Defendants.

### A. **Debtor's 2013 Chapter 11 Case**

Debtor's former Chapter 11 case, no. 13 B 01419, was filed on January 15, 2013

(the "2013 Chapter 11 Case"). Benjamin represented the Debtor in her 2013 Chapter 11

Case. (Pl.'s Trial Ex. ["PX"] 33, ¶ 9.)

On January 15, 2013, Benjamin filed a Disclosure of Compensation for Attorney

for the Debtor ("Fee Disclosure") in the 2013 Chapter 11 Case indicating that he had

received $6,000 prepetition for services rendered or to be rendered in connection with

that case. (PX 33, ¶ 10; *See* Fee Disclosure, Dkt. No. 5, 13 B 01419, Jan. 15, 2013, at 1.[1])

The Fee Disclosure was filed by Benjamin, as member or otherwise associated with

"Benjamin Legal Services." (*See* Fee Disclosure, Dkt. No. 5, at 2.) The Retainer

Agreements attached to the referenced Fee Disclosure, however, purport to be made

between the Debtor, as "'Client' or 'Debtor,'" and BBLLP, as "'Firm' or 'Attorney,'" and

---

[1] While the 2013 Chapter 11 Fee Disclosure was not offered by either party as a trial exhibit, the document was referenced by the parties in pleadings and in testimony at trial, and is a document of record filed in the 2013 Chapter 11 Case. Judicial notice of documents of record in the prior bankruptcy cases referenced in pleadings, testimony or argued in briefs or during trial to support a claim or defense would have been taken upon request and offer of such documents into evidence. Judicial notice may therefore be taken and is hereby taken of documents cited herein by reference to case and docket number, and which were helpful in understanding other evidence offered or argued during trial without any objection. *See* Fed. R. Evid. 201.

signed by the Debtor, as party-client, and by Benjamin, not individually but on behalf of BBLLP and solely as representative "FOR FIRM[.]" (*See* Fee Disclosure, Dkt. No. 5, Ex. 1, at 1 and 7; *Id.*, Ex. 2, at 1 and 3.) No reference to Benjamin in his individual capacity or to "Benjamin Legal Services" is included. (*See* Fee Disclosure, Dkt. No. 5, Ex. 1, 2.) Instead, the Agreements both bear BBLLP's letterhead and were executed between client and the firm of BBLLP.

Although Benjamin filed an Application to retain and employ himself and his firm, BBLLP, to represent the Debtor in possession in the 2013 Chapter 11 Case (*see* Application, Dkt. No. 16, 13 B 01419, Feb. 5, 2013), the Application was ultimately withdrawn on May 2, 2015 with no order entered approving or denying the Application. (*see* Dkt. No. 55.)

On May 21, 2013, Debtor's 2013 Chapter 11 Case was dismissed upon motion of the United States Trustee "for cause," including failure to meet timely filing and reporting requirements and to obtain counsel. (*See* Order Dismissing for Debtor, Dkt. No. 56 (citing 11 U.S.C. § 1112(b)) (*granting* U.S. Trustee's Mot. to D. or Convert Case, Dkt. No. 47, April 18, 2013).)

The parties agree that the Debtor was represented by Benjamin, at least in the beginning of that case. Debtor testified that she signed a retention agreement for that representation. However, she did not recall when or whether that agreement was filed, or the precise terms of any agreement signed.

At trial, Benjamin testified that fees owed for legal services rendered in connection with the 2013 Chapter 11 Case had been paid, in part, out of the $6,000 prepetition retainer disclosed in that case, and any fees due but not covered by the retainer were waived before the Debtor's prior Chapter 13 case was filed.

### B. Debtor's 2013 Chapter 13 Case

On July 22, 2013, Debtor filed her prior Chapter 13 bankruptcy case, no. 13 B 29200 (the "2013 Chapter 13 Case"). (PX 33, ¶ 6.) Debtor was represented by Benjamin

4

and Theresa Benjamin of the firm of BBLLP. (*See* PX 33, ¶¶ 7, 8; Fee Disclosure, *infra*, Ex. 2; *see also* PX 3, 4.)

On July 25, 2013, Benjamin filed a Fee Disclosure in the 2013 Chapter 13 Case, disclosing prior receipt of $423.00 "towards legal services." Compensation for legal services rendered in the case was agreed to be accepted on an "hourly" rate basis. The source of the compensation received was "Debtor's Friend." The source of the compensation to be paid was identified as "Debtor."(*See* PX 33, ¶ 8; Fee Disclosure, Dkt. No. 8, 13 B 29200, July 25, 2013, at 1.) Additional terms and limitations were disclosed by reference to the Attorney Client Retainer Agreement attached to the Fee Disclosure. (the "Chapter 13 Retainer")

The Chapter 13 Retainer purports to have been executed between BBLLP, as "'Firm' or 'Attorney,'" and the Debtor, as "'Client' or 'Debtor,'" and signed by Benjamin, not individually but "FOR FIRM[,]" namely, BBLLP. The Chapter 13 Retainer also bears the firm's letterhead. (*See* Fee Disclosure, Dkt. No. 8, *supra*, at 2 and 6.) The "Subject Matter" of legal representation under that agreement was defined, in part, by the following:

> Client retains and employs Attorney (and not any specific individual attorney) to advise and consult Client in relation the qualifications and procedures related to a potential filing of a petition for relief under Chapter 13 of the US Bankruptcy Code . . . .

(*Id*. at 2, ¶ 1.) Postpetition hourly fees were to be paid under the Debtor's Chapter 13 Plan, subject to court approval. (*Id*. at 5–6, ¶ 15.) Postpetition fees remaining due upon conversion or dismissal of the case, however, "shall be due and owing and payable immediately upon said conversion or dismissal." (*Id*. at 2, ¶ 1.)

On November 5, 2014, the Chapter 13 case was dismissed upon motion of the Chapter 13 trustee for failure to make timely payments proposed by the plan in accordance with 11 U.S.C. § 1326(a)(1). (PX 33, ¶ 11; PX 22, 23.) Debtor's proposed plan, as modified from time to time, had not yet been confirmed, but she was required by law

5

to start making and maintain proposed monthly payments to the Chapter 13 trustee for
disbursement upon plan confirmation, *see* 11 U.S.C. § 1326.  While Debtor made
payments to the Chapter 13 trustee of more than $14,000 during the pendency of her
case, she appears to have fallen behind and was unable to cure arrearages in time to
confirm her proposed plan. (*See* Mod. Ch. 13 Plan dated Feb. 4, 2014, Dkt. No. 60, Case
No. 13 B 29200 (proposing monthly plan payments of $1,026.77); *see also* Mot. to Modify
Plan, Dkt. 97, Case No. 13 B 29200, Sept. 15, 2014, at ¶¶ 2–5, *withdrawn*, Dkt. No. 108,
Nov. 5, 2014.)

On November 13, 2014, Theresa Benjamin filed a Notice of Application and
Amended Application for Compensation for Representing Chapter 13 Debtor(s) (the
"Fee Application") on behalf of the firm of Benjamin Brand, LLP. (PX 33, ¶ 12; *see* PX 3,
4.)  The Fee Application was noticed for and set for hearing on December 3, 2014. (PX 3,
at 1 of 13.)  It sought allowance of compensation in the amount of $14,870.20, and
payment of fees allowed minus the $423 prepetition retainer disclosed in the Chapter 13
Fee Disclosure. (*see* PX 3, 4.)  The fee balance claimed due ($14,447.20) was requested to
be made payable to BBLLP. (PX 4.)

Debtor's 2013 Chapter 13 Case remained open pending final accounting and
report to be made by the Chapter 13 trustee, following dismissal of the case on
November 5, 2014.

### C.  Post-Dismissal Payments of Legal Fees Due in the 2013 Chapter 13 Case

After Debtor's Chapter 13 Case was dismissed but before the Fee Application
was heard, Debtor and Benjamin exchanged a series of emails where Debtor expressed
her desire to refile her bankruptcy case as promptly as possible. (*See, e.g.,* PX 24–26
(emails dated Nov. 17, 19 and 20, 2014).)  Debtor's emails were sent to Benjamin's
professional email account associated with BBLLP, and copied to Theresa Benjamin's
professional email account with the same domain name (@benjaminlaw.com) associated
with BBLLP in the 2013 Chapter 13 Case. (*See* PX 24–26.)

6

On November 20, 2014, Debtor obtained a cashier's check for $4,000 made payable to the Chapter 13 trustee and to Benjamin.  In an email sent by the Debtor to Benjamin and copied to Theresa Benjamin, Debtor indicated that the $4,000 check would be delivered the next day, and that she would have "another $1,000 for November" the following week. (*See* PX 21, 26.)  Debtor testified that she obtained the cashier's check, made payable to the trustee and Benjamin, and delivered that check to Benjamin's office shortly thereafter.  According to the Debtor, Benjamin called her after she delivered the check, told her he could not accept that check, and instructed her to deliver a new check made payable to him only.  Benjamin testified that he had no recollection of receiving that cashier's check, but maintained that amounts payable to him were for legal fees due in connection with the 2013 Chapter 13 Case.

On November 24, 2014, Debtor obtained another cashier's check for $4,000 made payable to Benjamin only.  That check was delivered to Benjamin and deposited into his personal bank account at JPMorgan Chase Bank, N.A. that same day. (PX 19, 20.)  At trial, Benjamin testified that the $4,000 check was delivered to him as payment for legal fees owed by the Debtor to him and his firm.  According to Benjamin, Debtor had been informed that legal fees owed to him and his firm for services rendered in connection with her 2013 Chapter 13 Case would need to be repaid before her new case could be refiled.

Debtor's earlier email and notations made on the check referencing her 2013 Chapter 13 Case number (as well as an adversary case number associated with her bankruptcy case) suggests that the $4,000 payment was intended to apply to legal fees due at the time. (PX 19, 20.)  Emails exchanged by the Debtor and Benjamin in November and December suggest that Debtor was aware that this and other payments were required to be made to refile her case. (*See, e.g.*, Benjamin Email, Dec. 8, 2014 at 5:14 p.m., PX 27 ("We have to get paid before we can refile for the same reasons as last time."); *see also* PX 28.)  Although Debtor's testimony with respect to the $4,000 payment

7

was inconsistent and contradictory, she eventually appeared to concede that the payment was made on account of debt due to the Defendants. According to Benjamin, the $4,000 payment was made on account of fees due at the time in connection with the 2013 Chapter 13 Case, and were not intended to cover any retainer or other expenses of refiling the new case.

On December 3, 2014, hearing on the Fee Application filed in the 2013 Chapter 13 Case was concluded without Order, the case having been previously dismissed. (PX 5; PX 33, at ¶ 13.)

On December 8, 2014, Benjamin emailed the Debtor requesting payment of a current balance of $14,000 due for services rendered in connection with the 2013 Chapter 13 Case. (PX 27, at 2; *see also* PX 28.) Benjamin also informed the Debtor that a check from the Chapter 13 trustee in excess of that balance—constituting of amounts of the proposed plan payments in her 2013 Chapter 13 Case—would be sent to her later that week. (*See* PX 27 at 1; PX 28.)

When Debtor requested a breakdown of his time and work performed, Benjamin sent her the firm's time records for her 2013 Chapter 13 Case, and noted that such records were incomplete and did not include all work performed after the firm submitted their Fee Application in the case. Benjamin requested payment of a total balance due of $14,000, indicating such amount included a discount given on fees due at the time for work done in connection with her 2013 Chapter 13 Case. (PX 27.)

Between November 17 and December 8 of 2014, Debtor exchanged a series of emails with Benjamin where she made repeated requests for assistance in refilling her bankruptcy case, followed by repeated inquiry as to when her case would be refiled. After dismissal of the prior Chapter 13 Case, her urgency was precipitated by the reinstatement of collection actions, additional liability assessments, fixing of liens, and threats of eviction, foreclosure , or diminution of her sole real estate interest and primary residence. (*See* PX 24–28.)

Debtor's emails also discussed the need to include additional liabilities assessed after her prior case was filed, including income taxes and encumbrances placed on her condominium. Disputes over the extent of existing encumbrances, were also noted. Debtor also noted that her income has decreased from the prior year: She expressed urgency as to her need to refile promptly in order to prevent new assessments of liabilities and encumbrances that would be stayed if the case were filed. (*See* PX 24–28.)

On December 16, 2014, Debtor issued a check for $14,000 made payable to Benjamin, and noted in the face of the check as "legal fees." (PX 1.) Debtor testified that she sent this check to Benjamin upon receipt of a payment due to her from the Chapter 13 trustee for more than $14,000. (*See* PX 28.) These funds had been paid to and withheld by the Chapter 13 trustee for proposed plan payments, and were reimbursed to the Debtor with no payments made to creditors from those funds after dismissal of her 2013 Chapter 13 Case prior to confirmation of her proposed plan.

On December 18, 2014, Benjamin deposited the $14,000 check into his personal account at J.P. Morgan Chase Bank, N.A. (PX 2.) No evidence showed transfer of those funds into BBLLP's general account. Benjamin does not dispute that the payments were paid to him and deposited into his personal account. Nor is it claimed that BBLLP received such funds later, either in the form of a direct cash transfer or in any other form accounting for the value of the transfers made to Benjamin by the Debtor.

Debtor's 2013 Chapter 13 Case was closed on March 10, 2014, after the Chapter 13 Trustee's Final Report was filed on March 9, 2014. (*See* Final Report, Dkt. Nos. 115, Case No. 13-29200, March 9, 2014; *see also* Notice, Case Closed and Trustee Discharged, Dkt. No. 116, Case No. 13-29200, March 10, 2014.) Benjamin does not dispute Debtor's testimony that, upon deposit of the trustee's check into her account, she submitted the $14,000 payment to Benjamin. Nor does Benjamin dispute that he deposited such amounts—constituting payment of the balance claimed due for legal fees owed in

connection with the 2013 Chapter 13 Bankruptcy—into his personal account on December 18, 2014.

### D. Debtor's Current Chapter 13 Case

On March 13, 2015, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. (PX 33, ¶ 5.) In her schedules of assets and liabilities, Debtor listed assets with a total estimated value of $897,900, and total liabilities of $964,000. (*See* PX 6–8, 15–17.)

Debtor's primary asset at the time the case was filed—a condominium located at 1110 N. Lake Shore Drive in Chicago, Illinois—was estimated to have a current market value of $850,000, subject to a claim for $628,142 by a creditor secured by the real estate, a claim scheduled as then held by BCS Services, Inc. (PX 6, 15.) Creditors filed proof of additional claims secured by the real estate adding up to $1,091,526.91. (*See* PX 18; *see also* PX 10–14.) The following creditors filed secured claims, asserting lien interests in the condominium:

1110 Lake Shore Drive Condominium Association: $ 28,567.12

BCS Services, Inc.: $666,719.64

Cook County Treasurer: $ 10,650.67

Internal Revenue Service: $ 23,410.71

U.S. Bank National Association: $362,178.78

TOTAL SECURED CLAIMS: $1,091,526.92

(PX 10–14, 18.) The claims assert rights against the condominium that arose prior to commencement of this case. No objection to these claims has been filed by the Debtor, the Chapter 13 trustee or any other party in interest in this case. (*See* PX 18.)

Debtor scheduled personal property with a total estimated value of approximately $47,900, and claimed exemptions of $4,900 with respect to some of those assets. (*See* PX 7, 8.) Her personal property included checking accounts; furniture and household goods; fine art, collectibles, Persian rugs, and antique china; clothing, fur

coats and jewelry; interests in two businesses valued at zero; and two of the original

claims brought against the Defendants, a claim for turnover of the $4,000 referred to

earlier herein and the preference claim for $14,000. (PX 7.) Debtor claimed a $500

exemption on amounts recovered from the turnover and preference claims disclosed in

her schedules and valued at a total of $18,000. (PX 8.)

Among her liabilities, Debtor scheduled claims by general unsecured creditors

adding up to $320,409.40. (*See* PX 17.) She also scheduled unsecured priority claims for

state and federal taxes for the years 2012 and 2013 in the total amount of $15,785.48. (PX

16.) The Internal Revenue Service ("IRS") filed a claim in the amount of $36,572.05,

including the $23,410.71 secured portion referred to above, an unsecured priority claim

in the amount of $12,229.18, and a remaining general unsecured claim for $932.16. The

Illinois Department of Revenue ("ILDR") filed a priority claim for $3,330, and all other

claims were for $206,248.23 in General Unsecured Claims, plus the $932.16 claim of the

IRS, totalling $207,180.39. (PX 10, 14, 18.)

On May 12, 2015, Debtor filed this adversary proceeding against Benjamin,

Theresa Benjamin, and BBLLP seeking avoidance of a preference and recovery of

money or property.

On June 6, 2016, an Order authorizing sale of the Debtor's sole real estate asset—

the condominium located at 1110 North Lake Shore Drive, Chicago, Illinois—was

entered granting the Debtor's motion for authorization to sell the property for $740,000.

(PX 9.) Approval of the sale was free and clear of all liens, with liens on the property to

attach to proceeds of the sale, provided that all liens covering the property were paid in

full or agreed to by secured creditors for a short sale. (*See Id.*) The sale price was less

than the value of the real estate estimated in the Debtor's schedules, which had valued

the real estate at $850,000, and far below the total amount of claims secured thereby.

On June 8, 2016, Debtor's Modified Chapter 13 Plan dated April 26, 2016 was

confirmed. (*See* Dkt. No. 179.) The Plan provides a total household monthly income of

$2,871 and monthly expenses of $2,770, leaving $101.42 available for monthly plan

payments. (Dkt. 152.)  Included in the Special Terms, the plan provides that:

> The Debtor is the plaintiff in an adversary proceeding entitled *Pantazelos v. Benjamin et al.*, Adv. No. 15 A 00314, pending in this District. The Debtor will turn over to the Trustee all non-exempt proceeds of any recovery in this adversary proceeding. The one-time payment of $18,000 in Section D is computed on the amount expected to be recovered in that adversary proceeding. If the recovery in that proceeding is more or less than the amount stated in Section D, the payment to the Trustee will be more or less, accordingly.

(Dkt. 152.)

## CONCLUSIONS OF LAW

### I. JURISDICTION AND VENUE

Defendants challenged this Court's authority to enter final judgment against

them on the remaining preference claim, arguing that absent consent to adjudication by

a bankruptcy judge (expressly withheld by them) no constitutional authority lies to

enter final judgment against a party defendant who has not filed a proof of claim in the

bankruptcy case.  Defendants have also argued that no subject matter jurisdiction exists.

For reasons referenced below and as discussed in the prior Memorandum

Opinion on Defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) [Dkt. No.

38], the court has subject matter jurisdiction.  Subject matter jurisdiction lies under 28

U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy

judge under 28 U.S.C. § 157, and this proceeding was thereby referred here by

Operating Procedure 15(a) of the United States District Court for the Northern District

of Illinois. Venue lies under 28 U.S.C. § 1409.

This matter under Count 1 of the adversary proceeding involves a core

proceeding under 28 U.S.C. § 157(b)(2)(F), being an action to avoid and recover alleged

preferential transfers. Defendants have argued that the preference claim cannot be decided by a bankruptcy judge, citing *Stern v. Marshall*, 564 U.S. 462 (2011).

In *Stern*, the Supreme Court recognized certain Constitutional limitations on a bankruptcy court's authority to enter final orders. *Id*. at 503. The action at issue in *Stern* was "a state law action independent of the federal law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy." *Id*. at 487; *see also Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) (holding that Congress may not vest in non-Article III courts the power to adjudicate a traditional contract action arising under state law, without the litigant's consent, subject only to ordinary appellate review). *Stern* held that bankruptcy judges are precluded from entering final orders on state law claims that are not resolved in the process of ruling on a creditor's proof of claim. *Stern*, 564 U.S. at 503.

Unlike the action in *Stern*, the claim at issue in this proceeding is not a counterclaim, nor is it one premised on state law. It involves express bankruptcy provisions, 11 U.S.C. §§ 547(b), 550, which allow a trustee or debtor in possession to avoid certain payments made by a debtor on the eve of bankruptcy, and to recover such transfers for the benefit of the estate or debtor.

Suits to avoid and recover a preference under §§ 547(b) and 550 of title 11, U.S.C., do not exist outside of bankruptcy; they arise under the Bankruptcy Code, and have no independent existence beyond a bankruptcy case. Such claims neither replace traditional common law suits nor seek determination of private rights not implicated by the relief granted under the Bankruptcy Code. The power to avoid preferential transfers is designed to further the Bankruptcy Code's central policy of equality of distribution: "creditors of equal priority should receive pro rata shares of the debtor's property." *Begier v. IRS*, 496 U.S. 53, 58 (1990).

A proceeding to avoid and recover a preference under §§ 547(b) and 550 therefore "stems from the bankruptcy itself" and may be constitutionally decided by a

13

bankruptcy judge. *Stern*, 564 U.S. at 499; *See In re Miszkowicz*, 513 B.R. 553, 556–57 (Bankr. N.D. Ill. 2014) (recognizing that "Bankruptcy courts in this circuit have consistently concluded that they may enter a final judgment on a preference claim . . . ."). *Cf. Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 593–94 (1985) (holding that "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, may create a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.").

## II. AVOIDANCE OF PREFERENTIAL TRANSFER

Count I of the amended complaint alleges that Benjamin was the initial transferee of a preferential payment of $14,000 made by the Debtor, for the benefit of BBLLP, on account of legal fees due to Benjamin and/or BBLLP from the 2013 Chapter 13 Case. Debtor seeks to avoid that preferential payment pursuant to 11 U.S.C. § 547(b), and to recover such payment from the Defendants under to 11 U.S.C. § 550.

Section 547(b) provides that a trustee may avoid any transfer of a property interest of the debtor if the transfer meets five requirements: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made on or within 90 days before the date of the filing of the petition; and (5) that enables the creditor to receive more than such creditor would if the case were a case under Chapter 7, the transfer had not been made, and the creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 547(b)[2];

---

[2] Section 547(b) provides that:

Except as provided in subsection (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

*Warsco v. Preferred Technical Group,* 258 F.3d 557, 564 (7th Cir. 2001); *In re Superior Toy &*
*Mfg. Co.,* 78 F.3d 1169, 1171 (7th Cir. 1996).

The trustee has the burden of proving the avoidability of a transfer under
§ 547(b) by a preponderance of the evidence. *See* 11 U.S.C. § 547(g); *In re Jones,* 226 F.3d
917, 921 (7th Cir. 2000) (*citing In re Badger Lines, Inc.,* 140 F.3d 691, 698 (7th Cir. 1998)).

Chapter 13 debtors have standing to assert avoidance actions held by the estate
on behalf of the estate, including an action to determine, avoid, and recover preferences
for the benefit of the estate. *See In re Smith,* 811 F.3d 228, 241 (7th Cir. 2016) ("Chapter 13
grants debtors 'possession of the estate's property,' which includes legal interests and
the right to bring 'legal claims that could be prosecuted for benefit of the estate.'"
(quoting *Cable v. Ivy Tech State College,* 200 F.3d 467, 472–73 (7th Cir. 1999), *overruled on*
*other grounds by Hill v. Tangherlini,* 724 F.3d 965, 967 n. 1 (7th Cir. 2013))); *see also Einoder*
*v. Mount Greenwood Bank (In re Einoder),* 55 B.R. 319, 322–24 (Bankr. N.D. Ill. 1985)
(Chapter 13 debtor has standing to prosecute avoidance of a preferential transfer under
§ 547). Defendants' arguments in this respect have been fully discussed and ruled on
by Opinion and Order on their prior motion to dismiss referred to earlier, *see* Dkt. Nos.
38, 40.

---

(3) made while the debtor was insolvent;
(4) made—
   (A) on or within 90 days before the date of the filing of the petition; or
   (B) between ninety days and one year before the date of the filing of the petition,
   if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under chapter 7 of this title;
   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt provided by the provisions of
   this title.

11 U.S.C. § 547(b).

## A. Transfer to Benjamin Within 90 Days of Petition

On or about December 16, 2014, within 90 days before the bankruptcy petition was filed, Debtor made payment of $14,000 to Benjamin, on account of legal fees due to Benjamin and/or BBLLP for services in a prior bankruptcy case. The evidence shows, and Defendants do not dispute that Benjamin received a check for $14,000 from the Debtor and deposited that check into his individual bank account a few days later.

The $14,000 payment to Benjamin qualifies as a "transfer of an interest of the debtor in property" under § 547(b). *See* 11 U.S.C. § 101(54) (defining "transfer" to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property."). "[P]roperty of the debtor subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier*, 496 U.S. at 58 (internal quotation marks omitted). The funds were paid from the Debtor's personal bank account, and Defendants do not contest Debtor's interest in the amounts transferred.

Debtor has established that the $14,000 payment was a transfer "to or for the benefit of a creditor . . . for or on account of an antecedent debt owed by the debtor before such transfer was made . . . [and] made . . . within 90 days before the date of the filing of the petition . . . ." *See* 11 U.S.C. § 547(b)(1), (2), (4)." An "antecedent debt" exists when a creditor has a claim against the debtor, even if the claim is unliquidated, unfixed, or contingent. *See Energy Coop., Inc. v. SOCAP Int'l, Ltd. (In re Energy Coop., Inc.)*, 832 F.2d 997, 1001 (7th Cir. 1987).

The Fee Disclosure and Fee Application in the 2013 Chapter 13 Case indicates that Debtor retained the firm of BBLLP for representation in the 2013 Chapter 13 Case and that Defendants claimed fees in excess of $14,000. The $14,000 payment was requested for payment of the balance due on fees owed from the 2013 Chapter 13 Case,

16

and the $14,000 payment was made on account of such fees. The $14,000 check was paid to Benjamin and deposited in his individual bank account within 90 days of the date of filing of the case filed by debtor who is the Plaintiff here.

## B. **Payment Was Made While Debtor Was Insolvent**

Defendants argue that the Debtor has not shown that she was insolvent at the time she made that payment, as required to avoid a preferential transfer under § 547(b)(3). As relevant in this case, insolvency means a "financial condition such that the sum of [the] entity's debts is greater than all of [its] property, at a fair valuation . . . ." 11 U.S.C. § 101(32). A debtor is presumed insolvent on and during the 90 days before filing for bankruptcy. *See* 11 U.S.C. § 547(f) (1993). This presumption requires the Defendants to present evidence sufficient to rebut the presumption, but it does not relieve the Plaintiff of her ultimate burden of proof of insolvency to establish a prima facie case under § 547(b). *See In re Taxman Clothing Co.*, 905 F.2d 166, 168 (7th Cir. 1990); *see also* Fed. R. Evid. 301 ("In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption.")

Defendants argue that the Debtor's schedules of assets and liabilities were not consistent with her representations of the value of her assets reported in schedules filed in her prior case. Specifically, Defendants rely on Debtor's schedule of personal property filed in the 2013 Chapter 13 Case where substantially similar personal property as scheduled in her current case was valued at $151,560, and contends that the Debtor therefore undervalued her personal property by more than $100,000 in her later case. (*See* Defs.' Trial Ex. 4.[3]) But even assuming that the Debtor's assets could be sold for $151,560 and even assuming that no exemptions were claimed, Debtor's priority

---

[3] Other potential trial exhibits identified in Defendants' exhibit list were not offered into evidence or were objected to and not admitted into evidence at trial.

Case 15-00314    Doc 114    Filed 12/27/16    Entered 12/27/16 13:44:38    Desc Main
Document    Page 18 of 24

claims ($15,559.21) and general unsecured claims ($207,180.39) would still exceed the value of the Debtor's assets by more than $70,000.

Moreover, Debtor credibly testified as to the reasons why her personal property was valued at a significantly reduced amount in her current case. She testified that her previous case included the insured value of her personal property, which was the replacement value of her property and not an assessment of the current estimated value of her assets. She testified that she believed the values reported on schedules in this case reflected the current value of her property. She further testified she had attempted to liquidate some of her personal property—such as Persian rugs and antiques—and had found that the market for such assets was extremely limited. Her testimony in this respect was consistent and Defendants presented no evidence sufficient to question her opinion that the property values included in her schedules in this case reflected the actual market value of those assets at the time the current bankruptcy case was filed.

The evidence also shows that the Debtor's financial condition had deteriorated between the filing of her 2013 Chapter 13 Case and the time when she made the $14,000 payment in December of 2014. In emails to Benjamin regarding the need to refile her Chapter 13 case, Debtor notes that her income had decreased and she had acquired new liabilities not reflected in her prior schedules. Debtor's repeated requests that her case be refiled because of urgent need for bankruptcy protection, and that she could pay the legal fees due as promptly as funds became available to her were consistent with contentions that she was insolvent at the time.

As noted before, Debtor's schedules show that she was insolvent when this case was filed. Claims filed by her creditors in this case indicate that Debtor had significantly underestimated her liabilities. No evidence was presented showing that the Debtor's assets were in fact more valuable than she estimated them to be. In light of all evidence, therefore, Defendants failed to come forward with evidence sufficient to

rebut the presumption of insolvency in § 547(f), and Debtor has otherwise supported
that presumption with evidence presented in this case.

### C. Payment Enabled Creditor to Receive More Than Otherwise Entitled

With respect to the last element needed to prove avoidance under § 547(b),
Defendants were shown to have received more than they would have been entitled
under the Bankruptcy Code if the payment had not been made. The $14,000 payment
enabled Benjamin to receive more than he would have if this case were filed as a
Chapter 7 and the payment had not been made. Defendants do not contend that they
received any less that the full amount demanded by Benjamin as due at that time for
fees owed in connection with the 2013 Chapter 13 Case.

Claims against Debtor's sole real estate asset when the case was filed exceeded
value of the property estimated by Debtor in her schedules. Defendants did not present
evidence showing higher value of the property reported in Debtor's schedules.

In a Chapter 7 liquidation, even assuming that all of the debtor's personal
property could be sold at the full scheduled value, with no costs of liquidation, but
deducting exemptions, the net proceeds to a trustee would not exceed $43,000 (total
personal property value of $47,900 minus claimed exemptions of $4,900). This would
have been sufficient to pay the IRS and ILDR priority claims totaling $15,559.21, leaving
$27,440.79 for general unsecured creditors. Based on the total general unsecured claims
of $207,180.39, this would have resulted in a distribution of approximately 13.2% to
general unsecured creditors. The $14,000 payment of the fee claimed by Benjamin and
BBLLP before the transfer was made paid Defendants much more than they would have
received in a Chapter 7 case if the transfer had not been made.

Therefore, Defendants received more than they would have been entitled to
receive in this or a hypothetical Chapter 7 case.

### III. Exceptions to Avoidance of Preferential Transfers

Otherwise voidable transfers may not be avoided if shown to meet the exceptions in § 547(c).  Defendants bear the burden of proving nonavoidance under § 547(c).  *See* 11 U.S.C. § 547(g).

### A. Defendants Failed to Show Subsequent New Value Exchanged

Defendants argue that, even if the transfer was preferential, it cannot be avoided because new value was given.  Section 547(c)(4) declares that a trustee may not avoid a transfer "to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor . . . on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." 11 U.S.C. § 547(c)(4).

Section 547(a)(2) states that "new value" means: "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2).

The theory underlying this "new value" defense is that "to the extent new value is offered, the preference is repaid to the estate." *In re Prescott*, 805 F.2d 719, 727 (7th Cir. 1986). "The premise underlying the new-value defense is that by extending new value to the debtor without receiving payment, the creditor has effectively replenished the bankruptcy estate in the same way that returning a preferential transfer would." *Unsecured Creditors Comm. of Sparrer Sausage Co., Inc. v. Jason's Foods, Inc.*, 826 F.3d 388, 397 (7th Cir. 2016) (citing *In re Globe Bldg. Materials, Inc.*, 484 F.3d 946, 950 (7th Cir. 2007)).

For the defense to apply the following sequence of events must have taken place: (1) the creditor must have received a preference otherwise voidable under section

547(b); (2) after receiving the preferential transfer, the creditor must advance additional unsecured credit to the debtor; and (3) the additional credit must be unpaid. *Prescott*, 805 F.2d at 728.

In arguing "new value" as a defense to Plaintiff's preference claim, Defendants assert that services were performed after the $14,000 payment was made. However, Defendants presented no evidence of the value or the extent of those services. Defendants did not file Debtor's current Chapter 13 case. Nor have Defendants filed any claim against the Debtor's estate in this case for services rendered and not paid for before the bankruptcy case was filed, or otherwise justified their reference to "new value" as a defense to Plaintiff's preference claim.

Accordingly, Defendants have not established that "new value" was given so as to offset Plaintiff's preferential transfer claim. Defendants therefore have no defense under § 547(c)(4).

### B. **No Contemporaneous Exchange of New Value Was Shown**

Defendants also argue that the "contemporaneous exchange" defense set out in § 547(c)(1) is applicable to prevent avoidance of preferential transfer by the Plaintiff.

Section 547(c)(1) states that a preferential transfer may not be avoided "to the extent that such transfer was (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange . . . ." 11 U.S.C. § 547(c)(1). "The contemporaneous exchange exception exists to protect 'transfer[s] that [are] not really on account of an antecedent debt.'" *Energy Coop., Inc. v. SOCAP Int'l, Ltd. (In re Energy Coop.)*, 832 F.2d 997, 1003 (7th Cir. 1987) (citation omitted).

While Defendants have asserted that new value in the form of legal services in a new case were to be provided after the $14,000 payment was made, they have not shown that those services were in fact provided. Defendants did not actually file

Plaintiff's new bankruptcy case after the payment was made, nor have Defendants shown that any work was done in preparation for filing the case upon payment of the $14,000 agreed balance due for the prior case.

Therefore, Defendants have failed to meet their burden of establishing their defense under § 547(c)(1) to avoidance of the $14,000 preferential transfer by the trustee.

### C. Ordinary Course of Business Defense Not Established

Defendants finally argue that the "ordinary course of business" exception to avoidance of preferential transfers applies in this case. Section 547(c)(2) of the Code provides that a trustee may not avoid a transfer:

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms . . . .

11 U.S.C. § 547(c)(2). The purpose of this "ordinary course" defense is to protect recurring and customary credit transactions that were not preferential precisely because they occurred in the ordinary course of business. *See Kleven v. Household Bank*, 334 F.3d 638, 642 (7th Cir. 2003); *In re Midway Airlines, Inc.*, 69 F.3d 792, 797 (7th Cir. 1995).

In determining whether a transfer is made in the ordinary course of business or financial affairs between the debtor and a transferee, courts have considered relevant factors including: "(1) the length of time the parties were engaged in the transaction at issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and (4) whether the creditor took advantage of the debtor's deteriorating financial condition." *Kleven*, 334 F.3d at 642.

Defendants argue that the payment was ordinary between the parties because, pursuant to the attorney client retainer agreement, the payment became entirely due upon dismissal of the Debtor's 2013 Chapter 13 Case. However, the Debtor did not

22

make her payment when such payment became due upon dismissal. Instead, the record shows that the Debtor made a $4,000 payment shortly after her case was dismissed, and she subsequently paid the $14,000 balance claimed to remain due from the 2013 Chapter 13 Case. Defendants have not established how the pattern or the amount of payment made fell within any pre-established terms between the parties that was anything but preferential.

Alternatively, Defendants contend that the $14,000 payment was made according to ordinary business terms. *See* 11 U.S.C. § 547(c)(2)(B). The Seventh Circuit has noted that "'ordinary business terms' refers to the *range* of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary . . . ." *Matter of Tolona Pizza Products Corp.*, 3 F.3d 1029, 1033 (7th Cir.1993). Defendants offered no evidence of the type of payment practices that is ordinary within the Defendants' law practice. They have showed no range of practices that are ordinary between similar parties to make the $14,000 payment objectively ordinary within the exception to avoidance in § 547(c)(2). Nor have Defendants explained how demand of payment directly to Benjamin for services provided pursuant to the retainer agreement with BBLLP was objectively ordinary in the Defendants' line of business.

Therefore, Defendants have failed to show that the $14,000 payment falls within the exception to avoidance of preferential transfers in § 547(c)(2).

## IV. RECOVERY OF AVOIDED TRANSFER

Once a transfer is avoided as preferential pursuant to § 547(b), the trustee may recover that transfer from the "initial transferee of such transfer or the entity for whose benefit such transfer was made . . . ." 11 U.S.C. § 550(a)(1). "A transferee is one who exercises 'dominion over the money or other asset, the right to put the [asset] to one's

23

own purposes.'" *In re Smith*, 811 F.3d 228, 244 (7th Cir. 2016) (quoting *Bonded Financial Services v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988)).

In this case, Benjamin was the "initial transferee" of the $14,000 payment. Such payment was made directly to him and was deposited in his personal bank account. The evidence does not show that Benjamin later transferred this amount to BBLLP, nor have Defendants claimed that any such transfer later took place. However, BBLLP was "the entity for whose benefit such transfer was made" and is therefore liable for such transfer under § 550(a)(1).

Accordingly, remaining Defendants are each liable for return of the $14,000 preferential payment, subject to the single satisfaction limitation set out in § 550(d).

CONCLUSION

For the foregoing reasons, Judgment on Count 1 will be entered in favor of the Plaintiff and against the Defendants.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 27 day of December, 2016